FILED & ENTERED

OCT 1 1 2006

CLERK
U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN THE MATTER OF | : | |
| MARCOS MACHUCA MARTINEZ | : | CASE NO. 03- 04665 (SEK) |
| DEBTOR | : | CHAPTER 7 |
| WIGBERTO LUGO MENDER, as Trustee for the Estate of Marcos Machuca Martínez, | : | |
| PLAINTIFF | : | ADV. NO. 04- 00041 |
| V. | : | |
| PORFIRIO GUADALUPE CARRION | : | |
| DEFENDANT | : | |

### OPINION AND ORDER



The issue at hand is whether the Trustee met his burden of showing the $175,000 received by the Defendant when Debtor executed a deed of sale conveying realty to Computer Gallery, Inc. ("Computer Gallery"), can be avoided pursuant to 11 U.S.C. §§ 544, 547, and 550 of the U.S. Bankruptcy Code. Defendant objects the Trustee's attempt to avoid this transfer for a number of reasons, which we address seriatim. For reasons that follow, we grant the Trustee's request.

### Undisputed Relevant Facts

(1) Defendant owned a tract of land with its structure located in Cañaboncito Ward, Caguas, Puerto Rico ("the realty").

(2) On October 19, 1992, without first executing a deed of sale, debtor subscribed a $450,000.00 note and mortgage deed

2

payable to the bearer upon demand ("the mortgage note"), encumbering the realty, and delivered this note to the Defendant. Four months later, on February 17, 1993, the parties executed the deed of sale whereby defendant conveyed the realty to the debtor.

(3) On February 17, 1993, debtor executed another mortgage note and deed for a $300,000 loan secured by a lien on the realty payable to R&G Mortgage Corp.

(4) These deeds (the purchase/sale executed by defendant and the debtor, the mortgage deeds for $450,00 and $300,000 executed by the debtor in favor of the bearer and R&G Mortgage Corp.) were then presented simultaneously at the Registry of the Property of Puerto Rico, and were later recorded by the Registrar.

(5) On October 30, 2002, Debtor and Computer Gallery, Inc. executed an option agreement whereby Computer Gallery agreed to purchase the realty pursuant to certain terms and conditions. Computer Gallery exercised its option and purchased the realty, as per deed of sale dated February 28, 2003. At closing, Defendant received $175,000 in exchange for relinquishing the $450,000 note for its cancellation.[1]

(6) Debtor filed this voluntary petition under Chapter 7 of the U.S. Bankruptcy Code on May 7, 2003.

(7) On April 2, 2004, the Trustee filed this adversary proceeding to recuperate the $175,000 received by the Defendant at the February 28th closing, claiming it was a preferential transfer susceptible to avoidance under 11 U.S.C. §§ 544, 547 & 550.



---

[1]  The note and mortgage were cancelled on March 13, 2003.

3

(8) On the eve of trial, the parties submitted the matter for adjudication based on agreed facts and documents attached to the pretrial order, later supplemented by memoranda of law filed in response to our March 15, 2006 order.

### Discussion

Trustee must show the following elements if he wishes to avoid the $175,000 payment as a preferential payment subject to his strong arm power of avoidance: 1) there was a transfer of Debtor's interest in property; 2) to or for the benefit of a creditor; 3) for or on account of an antecedent debt owed by the debtor before such transfer was made; 4) made while the debtor was insolvent; 5) made on or within 90 days before the date of the filing of the petition; and 6) that the transfer enables such creditor to receive more than such creditor would receive if, the case were a case under Chapter 7 of the Code, the transfer had not been made, and such creditor received payment of such debt to the extent provided by the Code.  11 U.S.C. § 547(b).  Unless the Trustee proves each and every element, the $175,000 payment is not avoidable as a preference pursuant to 11 U.S.C. § 547 (b). *In re Bullion Reserve of N. Am.* 836 F.2d 1214,1217 (9th Cir. 1988); *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824 (1988); *Waldschmidt v. Ranier (In re Fulghum Constr. Corp),* 706 F. 2d 171,172 (6th Cir. 1983); *cert. denied* 464 U.S. 935 (1983).

The Trustee argues all the elements are present in this case claiming:

(1) The $175,000 payment to the defendant was a transfer of an interest in property of the debtor.

(2) This transfer was made to or for the benefit of



4

defendant, who is a creditor of the debtor.

(3) This transfer was made for or on account of an antecedent debt: the outstanding amount of the loan evidenced by the $450,000.00 note.

(4) The transfer was made within 90 days before the date this petition was filed, when debtor was presumed to be insolvent.

(5) Lastly, defendant received more than he would have received if the case would have been filed under Chapter 7 and the transfer had not been made. The Trustee considered defendant's right to payment as a general unsecured claim against the bankruptcy estate. The schedules show this was a no asset case, except for this cause of action worth a fraction of claims against the estate. Thus, Trustee argues that under a liquidation scenario, Defendant would be only entitled to a percentage of the $175,000.00.

Defendant objects to the avoidance of the $175,000 based on arguments that follow.

*I. Payment of the $175,000.00 was not a transfer of an interest in property of the Debtor.*

Defendant avers the Trustee did not prove that an interest in property of the Debtor was transferred during the 90 days preceding the filing of the bankruptcy petition. He argues the realty was sold and its title was transferred from debtor to Computer Gallery on October 22, 2002, when the parties executed the option agreement, and not on February 28, 2003, when debtor and Computer Gallery executed the deed of sale. Thus, Computer Gallery, and not the debtor, delivered the $175,000.00 to the

5

defendant to satisfy the loan evidenced by the $450,000.00 note. Defendant bolsters his argument stating that as of October 22, 2002, Computer Gallery assumed the second mortgage of $450,000 encumbering the realty.[2] We reject defendant's theory for two reasons that follow.

First, defendant's theory is not sustained by evidence on hand. For example, the deed of sale executed by debtor and Computer Gallery, identifies the following liens encumbering the realty **at the moment of the sale**: (1) a mortgage in favor of R&G Premier Bank in the principal amount of $300,000.00, and (2) **a mortgage constituted in guaranty of a mortgage note payable to the Bearer in the principal amount of $450,000.00.** See second paragraph of *Joint Exhibit IV*.

That same paragraph provides:

> **The mentioned mortgages will be paid off with product of this transaction** so that the property object of this sale becomes free of liens and encumbrances.[3] (Our emphasis)

In addition, the Exhibit's Sixth paragraph states:

> SIXTH: This sale is carried out for the agreed and adjusted price of NINE HUNDRED AND FIFTY THOUSAND DOLLARS ($950,000.00), Selling Party confesses it received previous to this act, the sum of TWENTY THOUSAND DOLLARS ($20,000.00) from the Purchasing party



---

[2] Defendant presented as part of the evidence he proposed to submit, the Option agreement and the check for $175,000.00 issued by Doral in payment of the mortgage note. The Trustee objected to the admission of this documents because they are not relevant. We ruled in favor of the Trustee. Now we explained.

[3] Our translation of: "Las hipotacas antes mencionadas serán saldadas en su totalidad con producto de esta transacción, de suerte que la propiedad objeto de esta compraventa quede libre de cargas y gravámenes."

6

previous to this act; also receiving in this act, the sum of NINE HUNDRED AND THIRTY THOUSAND DOLLARS ($930,000.00); partially from the product of a loan granted on this date, in consideration for which the seller grants the buyer the most efficient and formal letter of payment.[4]

Second, even if we were to adopt defendant's argument that the Option Agreement was in fact a contract to purchase the realty,[5] its sale although perfected, was not consummated or formalized until delivery, or some other form of tradition took place.[6] *Segarra v. Widow of Lloréns*, 99 P.R.R. 58, 70 (1970).

---

[4] Our translation of: "Se lleva a cabo esta compraventa por el convenido y ajustado precio de NOVECIENTOS CINCUENTA MIL DOLARES ($950,000.00), cuya suma la Parte Vendedora confiesa haber recibido con anterioridad a este acto, la suma de VEINTE MIL DOLARES ($20,000.00) de manos de La Parte Compradora con anterioridad a este acto; recibiendo además, en este acto, la suma de NOVECIENTOS TREINTA MIL DOLARES ($930,000.00); con parte del producto de un préestamo otorgado en el día de hoy, por cuyas prestaciones otorgan la más eficaz y formal carta de pago a La Parte Compradora."

[5] Defendant did not present any case law, nor authorities to sustain his theory. However, we have review the case of *Irizarry López v. García Cámara,* 155 D.P.R. 713 (2001), in which the Supreme Court acknowledges that a document title option agreement could be a bilateral contract of sale with deferred execution.

[6] In the case of *Segarra v. Widow of Llorens,* 93 P.R.R. 58, 70-71 (1970) the Supreme Court of Puerto Rico states:
The contract of purchase and sale by itself does not convey the ownership over the thing sold.  Our juridical system requires, for the conveyance of ownership over the thing sold, not only the agreement of the wills over the thing and its price- perfecting of the contract, § 1339 of the Civil Code- but, also, the tradition or delivery of the thing.
. . .
The tradition or delivery is properly the manner of transmitting the ownership and other property rights over things object of contract, under the Civil



7

The only evidence of tradition or delivery brought before this court was the deed of sale.

Hence, we find debtor conveyed ownership or title of the realty to Computer Gallery on the date these parties executed the deed of sale, or February 28, 2003. 31 Laws of P.R. § 3811.  The realty remained property of the debtor until that moment, so that debtor, and not Computer Gallery, paid the $175,000 from the proceeds of this sale to the Defendant.

 II. *Was defendant an unsecured creditor of this estate in bankruptcy?*

The Trustee argues[7] the Defendant is "not deemed to be a 'secured' [creditor] merely because he has a lien which is good as between the parties; his security must also constitute a lien as to third parties".[8]  The Trustee asserts he is a third party. Therefore, the pledge providing defendant with a security interest here is not effective against the Trustee as a third party because evidence of its date is not shown by an authentic document.[9]  Therefore, the transaction is a voidable transfer pursuant to 11 U.S.C. §§ 544 and 547.

---

Code.  Sections 1351 to 1353 of the Civil Code, 31 L.P.R.A. §§ 3811-3813, establish several manners of tradition, adopting, in general terms, the different manners recognized in the Roman Law.

[7]  Although the Trustee submits alternate grounds for this argument, we only need to address this one to fully adjudicate controversy.

[8]  *In re Supermercados San Juan, Inc.*, 575 F. 2d 8, 11 (1st Cir. 1978) (citations omitted).

[9]  *Ibid.*; 31 Laws of P.R. § 5023.



8

Defendant argues a pledge agreement is not needed to negotiate the $450,000 bearer note which has a date. The security interest was obtained when Debtor delivered it to defendant when it was executed, and defendant showed he had it in his possession until he relinquished it in exchange of the $175,000 payment. Furthermore, defendant argues, a pledge agreement does not have to be notarized in order to be valid.

The validity and legality of a claim for payment in bankruptcy is determined according to non bankruptcy law.[10] Here we look to the Laws of Puerto Rico because : (1) the transaction was consummated here, (2) the parties either reside here, or are authorized to do business in Puerto Rico, and (3) the petition for bankruptcy was filed in this jurisdiction.

Articles 1756 through 1780, 31 Laws of P.R. Ann. §§ 5001 through 5048, create and define valid pledges executed under the Laws of Puerto Rico. Pursuant to Article 1756 of the P.R. Civil Code, the requisites of pledge and mortgage contracts are the following:

> (1) That they be constituted to secure the fulfilment of a principal obligation.
> (2) That the thing pledged or mortgaged is owned by the person who pledges it or mortgages it.
> (3) that the persons who constitute the pledge or mortgage have the free disposition of their property, and, should they not have it, that they are legally authorized for that purpose.[11]

Moreover, that which is pledged must "be placed in



---

[10] *Raleigh v. Ill. Department of Revenue*, 530 U.S. 515, 120 S.Ct. 914, 147 L.Ed. 2d 13 (2000); *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979).

[11] 31 Laws of P.R. Ann. § 5001.

9

possession of the creditor or of a third person by common consent." 31 Laws of P.R. Ann. § 5021.

The Supreme Court of Puerto Rico tells us that a pledge "is not a contract of formal constitution." *Ramos Mimoso v. Superior Court*, 93 P.R.R. 538, 541 (1966).

> For its existence it suffices that it has been negotiated in any licit manner and that it complies with the intrinsic requirements that the Code establishes (§ 1762); it can even be constituted verbally, and it would be binding on the parties. **What happens is that in order for it to be effective against third parties, the evidence of its date should appear by authentic document. This slight requirement of formality, in order that it be effective against third parties, is based on the purpose of preventing the simulation by a debtor of secured credits to prejudice and in fraud of his third-party creditors. This concern of the Code to avoid the simulation of secured credits is of importance because this kind of credit enjoys, by virtue of the law, great preference.** It should be remembered that credits which enjoy preference with relation to specific personal property exclude all others and if two or more preferred credits concur with regard to certain personal property the secured credits exclude all others to the extent of the value of the thing given in pledge. (Citations omitted) (Our emphasis)

*Ramos Mimoso*, 93 P.R.R. at 541-542



"Thus, when property is pledged in Puerto Rico the pledgor remains the owner of the property and the pledgee receives a lien on the property for the value of the debt. In that context, what § 5023 clearly indicates is that the pledgee's lien is not superior to liens of third parties unless the pledge is properly authenticated." *Matter of Supermercados San Juan*, 575 F.2d at 12; *Liechty v. Descartes*, 9 Official Trans. Of the Opinions of the Supreme Court 660, 670 (1980); *In re Santos & Nieves, Inc.*, 814 F.2d 57 (1st Cir. 1987). An "authentic document is a legalized document, which is publicly attested, which is legally valid by itself. ... A document verified before a notary is an

10

authentic document." *Ramos Mimoso*, 93 P.R.R. at 540-542.

Against this backdrop, we now examine the arguments presented by the parties to this proceeding.

We begin by addressing whether the Trustee is a third party with rights superior to those of a creditor in possession of an unauthenticated pledge.

The Trustee was not a party to the pledge agreement executed by Debtor and the Defendant.  Thus, he is a third party, *Ramos Mimoso* 93 P.R.R. at 544.  Therefore, if he can prove the pledge does not meet the requirements for its validity, the pledge is ineffective against him as trustee, and he can seek and obtain the avoidance pursuant to 11 U.S.C. § 544(a)(1).

Defendant's argument that there is no need for a pledge agreement because the mere delivery of the bearer note to the Defendant is sufficient to create a lien as to third parties is rejected in the case of *In re Santos & Nieves*, 814 F.2d at 59-60, which applies 31 Laws Of P.R. Ann. § 1064.

We also reject Defendant's argument that the pledge does not have to be authenticated before a notary to be effective against the Trustee for reasons discussed above.



Defendant's reliance on the date stated in the authenticated note is misplaced.  The transfer that is being avoided here is the perfection of the pledge through its delivery. *In re Santos & Nieves, supra*.  The fact that the bearer note was dated and notarized does not establish the date the pledge was in fact perfected against third parties. *Id*.

Next, we address defendant's argument that the parties agree he possessed the note from the moment the mortgage deed was

11

executed until he relinquished it for cancellation. Hence, there is no need for an authentic document.

The authentic document requirement is intended to be a formal and absolute rule. *In the matter of Supermercados San Juan, Inc.*, 575 F. 2d 8, 12 (1st Cir. 1978); *Ramos Mimoso v. Superior Court of Puerto Rico*, 93 P.R.R. 538 (1966). This article of the Civil Code is one of strict compliance. "Unsuccessful good faith attempts to meet the perfection requirements of pledged property have not been given favorably treatment either in Puerto Rico [Citations omitted], or elsewhere. [Citations omitted]. Nor has the knowledge of creditors excused failure to perfect a security interest [Citations omitted]. While the result may, ..., make 'hard law' in 'isolated' cases, the alternative would be the disappearance of clear and automatic tests for validity and the substitution of endless evidence taking to determine the extent and significance of any secrecy in fact." *Matter of Supermercados San Juan*, 575 F.2d at 13.

Defendant has offered no case where the Insular Courts have created an exception to this reule. We haven't found any either. The Supreme Court of Puerto Rico has gone to great lengths to sustain and justify this rule of law.[12] We, as federal courts



---

[12] We are aware of the case of *Trueba v. Zalduondo*, 34 P.R.R. 713 (1925), in which the Supreme Court "held that a transfer of corporate stocks as collateral for a loan that was recorded in the corporation's official records was valid against later- attaching third parties, even though the transfer did not comply with the authentic document rule codified in the predecessor statute to 31 L.P.R.A. § 5023". *Federal Deposit Insurance Corporation v. Shearson- American Express*, 996 F. 2d

12

have no discretion to change it. *Rodríguez Suris v. Montesinos*, 123 F.3d 10, 13 (1st Cir. 1997); *Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 689 (1st Cir. 1994).

In sum, we find the Trustee is a third party. The authenticated document rule is of strict compliance. The pledge was not perfected for the failure to establish the date of the delivery by an authenticated document. The Trustee was able to prove his rights are superior to those of the defendant. Hence, we avoid Defendant's lien encumbering the realty, finding defendant has a general unsecured cclaim against this estate in bankruptcy.

Wherefore, we find Trustee met his burden of proving each of the elements of an avoidable preferential transfer pursuant to 11 U.S.C. § 547. Defendant will turnover the $175,000.00 payment to the Trustee forthwith to be distributed by the Trustee pursuant to the provisions of the Bankruptcy Code.

**SO ORDERED**, in San Juan, Puerto Rico, on October 10, 2006.

SARA DE JESUS
U.S. BANKRUPTCY JUDGE

---

493, 500 ( 1st Cir. 1993). However as expressed by the Court of Appeals for the First Circuit in the case of *Matter of Supermercados San Juan* 575 F. 2d at 12, "that decision was based on the fact that stocks so transferred would be authenticated by the public and formal records of the corporation as a transfer of a security interest. There is no such comparable authentication of the pledging of negotiable instruments". "The *Trueba* court did not create an exception to section 5023 and, in fact, reiterated that the authentic document rule 'is a rigid rule'."(citations omitted) *Federal Deposit Insurance Corporation, supra.*